## THE STATE v. CHARLES E. ESPENSCHIED, Appellant.

### Division Two, May 19, 1908.

1. **ATTEMPT TO RAPE: Necessary Evidence.** To warrant a conviction of assault with intent to rape, it must be shown that it was the intention of the person making the assault to accomplish his purpose and to overcome any and all resistance offered by the person assaulted. And in this case it is held that the evidence was sufficient to show that defendant's intention was, if it became necessary, to force compliance with his desires, at all events and regardless of any resistance the prosecutrix might make.

2. ———: ———: **Not Specifically Covered by Instruction.** And where this rule, that to authorize a conviction of an attempt to rape it must be shown that it was defendant's purpose to accomplish his purpose and to overcome any and all resistance offered by prosecutrix, was not directly presented to the jury in any instruction given, the court did not commit error

in failing to give such an instruction, if none covering the point was asked by defendant, and the only objection he made was in his motion for new trial that the court did not instruct as to all the law in the case.

3. INSTRUCTIONS: No Assignment. Where defendant in his motion for a new trial does not assign as error the giving of the State's instructions, they are not subject to review on appeal.

4. ————: Failure to Instruct on All the Law. It is not sufficient that the defendant at the time the court instructs the jury excepts to the failure of the court to instruct on all the questions of law in the case. It is his duty to definitely call the court's attention to any matter of law arising in the case or request any specific test of the defendant's guilt which he desires submitted to the jury.

5. SUFFICIENCY OF EVIDENCE. It is only where there is no substantial evidence to support the verdict that it will be set aside on the ground that "the verdict is against the evidence."

Appeal from St. Louis City Circuit Court.—*Hon. Hugo Muench,* Judge.

AFFIRMED.

*Farris & Matthews* for appellant.

To warrant a conviction upon an information for an assault with intent to commit a rape, the evidence must show that defendant's intention was, if it became necessary, to force compliance with his desires at all events and regardless of any resistance the woman might make. State v. Priestly, 74 Mo. 24; State v. Owsley, 102 Mo. 687; State v. Scholl, 130 Mo. 396; State v. Hayden, 141 Mo. 311. There was no evidence of sufficient probative force to convict the defendant of the crime for which he was tried, and the trial court should have submitted the case to the jury only upon the question of common assault. State v. Hayden, 141 Mo. 311. Under the evidence defendant did not intend to force compliance with his desire at all hazard, regardless of prosecutrix's resistance, and therefore he is not guilty of the crime charged. State

v. White, 52 Mo. App. 285; State v. Reseling, 186 Mo. 521. The intent with which the assault is committed must be the specific intent to rape, and the evidence must show the intent of defendant beyond a reasonable doubt. 23 Am. and Eng. Ency. Law (2 Ed.), 865. Mere solicitation does not constitute an intent to rape. There is not sufficient evidence to prove the intent to rape, beyond a reasonable doubt, and proof of such intent must be beyond a reasonable doubt before defendant can be convicted. Dusey v. State, 108 Ga. 477; Hunter v. State, 29 Fla. 486; Curry v. State, 4 Tex. App. 574; State v. McCune, 16 Utah 170.

*Herbert S. Hadley*, Attorney-General, and *N. T. Gentry*, Assistant Attorney-General, for the State.

(1) In his motion for a new trial, defendant did not assign as error the giving of State's instructions; but simply said that "the court did not instruct as to all of the law in the case." The instructions that were given, therefore, are not subject to review in this court. State v. King, 194 Mo. 481; State v. Kaiser, 124 Mo. 651. Defendant also failed to properly call to the attention of the trial court the alleged failure to fully instruct on all of the law of the case. State v. Weatherman, 202 Mo. 11; State v. Bond, 191 Mo. 555; State v. Finley, 193 Mo. 211; State v. Welch, 191 Mo. 189. (2) The evidence was sufficient to justify the jury in convicting the defendant of an assault with intent to rape. The conduct of the defendant in getting off of the street car with and following prosecutrix, taking hold of her by the arm, asking her to accompany him to a room, and offering her twenty dollars, clearly showed what his intention then was. When with this is considered defendant's other conduct in trying to force prosecutrix to go with him down the alley, his efforts to prevent her from giving the alarm, the tearing of her clothes and his threat to tear every rag off of her,

in order to accomplish his purpose, there can be no doubt that defendant intended to have connection with her by means of force. The striking of prosecutrix in the face and on the shoulder, the resistance defendant made to any interference by Dillard and Brooks, defendant's flight, and the false statements that defendant made to the policeman, and also to Mr. Brooks, conclusively established defendant's guilt. Convictions in cases of rape and assault with intent to rape have been upheld by this court in many instances where the evidence was not nearly so strong against the defendants as in the case at bar. State v. Urspruch, 191 Mo. 43; State v. Payne, 194 Mo. 442; State v. Platner, 196 Mo. 128; State v. Welch, 191 Mo. 179; State v. Montgomery, 63 Mo. 296; State v. Yocum, 118 Mo. 622; State v. Miller, 191 Mo. 587; State v. Dilts, 191 Mo. 665; State v. Dusenberry, 112 Mo. 277; State v. Marcks, 140 Mo. 656. There can be no doubt that defendant assaulted prosecutrix; and the fact that the assault was committed at that hour of the night, at a time when there were no persons near, and the fact that the assault was accompanied by immoral solicitations by the defendant, and threats, if prosecutrix refused him, were sufficient to convince the jury of defendant's criminal intention. 1 McClain on Crim. Law, sec. 463; State v. Whitsett, 111 Mo. 202; State v. Alcorn, 137 Mo. 121; State v. Urie, 101 Iowa 412; State v. Page, 127 N. C. 512; Dunn v. State, 56 Ga. 401; State v. Beard (Idaho), 57 Pac. 867; State v. McCune, 16 Utah 170; State v. Payne, supra.

BURGESS, J.—On July 2, 1907, the defendant was convicted in the circuit court of the city of St. Louis, and his punishment fixed at two years' imprisonment in the penitentiary, under an information, duly verified and filed in said court by the assistant circuit attorney of said city, charging him with an assault with

intent to rape one Mrs. Margaret Flower, at said city, on October 1, 1906. After unavailing motions for a new trial and in arrest, defendant appealed.

The facts, briefly stated, are as follows:

The prosecutrix, Mrs. Margaret Flower, who is a widow, was employed as cook at the Association Hospital, in St. Louis, Missouri. On the first of October, 1906, Mrs. Flower went with Dr. and Mrs. Adcock to a lodge meeting, and was returning to her home at said hospital. While riding on the street car she saw the defendant, who was also on the car, and who appeared to be somewhat intoxicated. The defendant was sitting in the front end of the car, and frequently looked around toward Mrs. Flower. The prosecutrix and the defendant both got off the car at the same place, and both took an Olive Street car, the prosecutrix getting off at Grand avenue. After she got off at Grand avenue, prosecutrix saw the defendant get off, and saw him following her. Defendant took hold of prosecutrix and started to walk along with her. She told him that he had made a mistake, and had taken hold of the wrong person. Defendant asked her to go to a room with him, which she declined to do. The defendant began using profane language and held on to prosecutrix, and insisted that she must go with him to a room. On account of the lateness of the hour (it then being half past eleven), there were no persons on the street in sight. Prosecutrix tried in every way to jerk loose from defendant, and tried to scream, when the defendant said, "You scream, if you dare, and you will see what I will do." The defendant again insisted upon her going to a room with him, and offered prosecutrix twenty dollars. The prosecutrix indignantly refused, and immediately began to scream. The defendant still held on to her arms, and dragged her along the street some distance. When they reached the alley at the side entrance of the hospital, the defendant attempted

to drag prosecutrix down the alley toward a barn. At this, prosecutrix began to call to some colored people, who lived near said barn; at the same time she took hold of a telephone pole. The defendant said: "If they (meaning the colored people) come down here, I will give them two dollars to shut their mouths." In the scuffle the skirt and waist of prosecutrix were considerably torn, which, when he discovered, the defendant said, "You will go with me. I will tear every God damn rag off of you, but I will accomplish my desire." Defendant then struck prosecutrix once in the face and three or four times on the body. Prosecutrix jerked loose from the defendant and ran across the street to the opposite corner. Defendant pursued her and caught her as she was going up the steps into the hospital building where she lived. Prosecutrix rang the bell and pounded on the front door; but no one came just then to admit her. Defendant again took hold of prosecutrix and threw her down on the steps, defendant falling with her; and the two then rolled down to the bottom of the steps. Prosecutrix quickly jumped up and ran some distance away from the defendant, and met a gentleman named Brooks. The defendant followed her, and she begged Mr. Brooks for God's sake to protect her. The defendant came up and said that she was a friend of his and was going with him. Prosecutrix denied this, and again begged Mr. Brooks to save her, saying defendant had assaulted her, and showed him where the defendant had struck her on one shoulder and on the face. The defendant again insisted that he had been out riding with this lady, and that they were friends. Mr. Brooks, who was a stranger to both of them, reluctantly walked in company with prosecutrix and defendant until they met a gentleman named Dillard. Defendant still had hold of prosecutrix by the arm, and was trying to get her away from Mr. Brooks. Complaint was made to Mr. Dil-

lard, who took hold of the defendant, and said he
would hold him till a policeman could be found. De-
fendant jerked loose from Mr. Dillard and struck at
him, and also struck at Mr. Brooks; defendant then
ran away. Before he left her, defendant took the pock-
et book belonging to prosecutrix and carried it off. As
defendant ran prosecutrix called out, "Men, for God's
sake, don't let him get away; he has my purse." A
policeman then came up, and started in pursuit of and
caught the defendant; but defendant said that he was
not the man who had followed prosecutrix. The de-
fendant was brought back to the hospital, whither pros-
ecutrix had gone, and she identified him as the man
who had assaulted her. Some time during the en-
counter prosecutrix lost her belt, but did not miss it
till she went in the hospital. The next morning, at the
police station, prosecutrix again identified the defend-
ant; and almost fainted when she saw him. Mr. Lin-
denberger, who lived in that locality, heard the screams
of prosecutrix, looked out of his window, and saw her
efforts to escape from the defendant, and also saw the
effort made by Mr. Brooks and Mr. Dillard to appre-
hend the defendant. Police officer Wheatey, who over-
took and arrested the defendant, testified that the de-
fendant at first denied that he was the man, then told
the officer that his name was Fred Espey; that he
lived in St. Louis county; but refused to state in what
part of the county he lived.

The defendant's evidence tended to prove that he
was badly intoxicated on the evening in question; that
he remembered having ridden with the prosecutrix on a
car; remembered that the conductor told him that he
was on the wrong car; that he got off at the same time
the prosecutrix got off. He, however, claimed that he
heard her say something about money; that some of his
money was gone the next morning, but that he did not
know what became of it. Defendant also introduced

a number of St. Louis county officials and prominent citizens, who testified that they were well acquainted with defendant, had known him for a number of years, and that he enjoyed a good reputation. They further testified that occasionally the defendant would get under the influence of liquor, and when he did, he was crazy, and not responsible for his conduct.

The first question presented for consideration is whether the evidence is sufficient to show that the defendant's intention was, if it became necessary, to force compliance with his desires at all events, and regardless of any resistance the woman who was the victim of the assault might make. The defendant contends that the evidence was not sufficient to establish that fact.

The law is well settled in this State that, to warrant a conviction for assault with intent to rape, it must be shown that it was the intention of the person making the assault to accomplish his purpose and to overcome any and all resistance offered by the person assaulted. [State v. Priestley, 74 Mo. 24; State v. Owsley, 102 Mo. 678; State v. Scholl, 130 Mo. 396; State v. Hayden, 141 Mo. 311.]

But this was a question for the consideration of the jury, under the evidence and the instructions of the court. It is true that it was not directly presented to the jury by any of the instructions given, nor was there any instruction covering the question asked by the defendant. In his motion for a new trial the defendant did not assign as error the giving of the State's instructions, but simply said that "the court did not instruct as to all of the law in the case." These instructions, therefore, are not subject to review in this court. [State v. Kaiser, 124 Mo. 651; State v. King, 194 Mo. 474; State v. Long, 209 Mo. 366.] While the record discloses that at the time the instructions were given "the defendant further excepted

to the failure of the court to instruct the jury on all questions of law in the case,'' he did not intimate or suggest to the court upon what feature of the case it had failed to instruct, nor request it to instruct in any manner. In State v. West, 202 Mo. l. c. 137, there is quoted with approval the following from State v. Mc-Carver, 194 Mo. 742:

''The only construction which can be placed upon this objection is that the instructions did not cover all the points of law involved in the case, and not that they were in any respect erroneous. We have held that when the instructions of the court are read to the jury, and the defendant desires further instructions, it is his duty, in fairness to the court, to call its attention to any matter of law arising in the case upon which the court had failed to instruct, and which was deemed necessary by the defendant to be placed before the jury in order that they might arrive at a just verdict, and in the event of the failure of the court to so instruct, it becomes the duty of the defendant to except at the time. [State v. Bond, 191 Mo. 555.]''

Besides, the point is not more definite in the motion for a new trial, and is entirely too indefinite to be available in this court.

It is not claimed in the motion for new trial that there is no substantial evidence to support the verdict, but that ''the verdict is against the evidence.'' It is only in case there is no substantial evidence to support the verdict that it will be set aside on such ground.

The verdict in this case met with the approval of the trial court, and the motion for a new trial was, we think, correctly overruled.

The judgment should be affirmed. It is so ordered. All concur.